IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANITA GUPTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.  07-243 |
| | ) | |
| | ) | Judge Nora Barry Fischer |
| SEARS, ROEBUCK AND CO. | ) | |
| AND SEARS HOLDINGS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Anita Gupta ("Plaintiff") has brought an action against Sears, Roebuck and Co. ("Sears") and Sears Holdings Corporation ("Sears Holdings") alleging employment discrimination in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; Title VII of the Civil Rights Act  of 1964, 42 U.S.C. § 20003, *et seq.*; and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq*. In addition, Plaintiff claims common law breach of contract and intentional infliction of emotional distress. (Doc. No. 25).   Before this Court is Defendants' Motion for Summary Judgment. (Docket No. 52).  In consideration of the parties' briefs, and for the following reasons, Defendants' Motion is hereby granted, in part, and denied, in part.

## I.     Dismissal of Sears Holdings

_____Initially, the Court addresses Defendants' argument that Sears Holdings Corporation should be dismissed from this case. (Docket No. 53 at 1, n. 1).   Sears is a wholly owned subsidiary of Sears Holdings. (Docket No. 25 at ¶3).   Defendants argue that Sears Holdings should be dismissed from

1

this action because it was not Plaintiff's employer, and Plaintiff does not assert that Sears Holdings took any action against her. Additionally, Defendants argue Plaintiff has failed to offer any facts showing that, as the parent corporation of Sears, Sears Holdings is liable for Sears' alleged discriminatory conduct. (Docket No. 53 at 1, n. 1).

Under Pennsylvania law, there is a strong presumption that a corporate parent will not be liable for the conduct of its subsidiary. *Ziegler v. Delaware County Daily Times*, 128 F.Supp. 2d 790, 795 (*Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691, 694 (Pa.Super.1998))(citations omitted). *See also Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*, 2 F.Supp. 2d 688, 691 (E.D. Pa. 1999) (citations omitted)("As a general rule, a parent corporation, like any stockholder, is not normally liable for the wrongful acts or contractual obligations of a subsidiary even if or simply because the parent wholly owns the subsidiary"); *De La Cruz v. Piccari Press*, 521 F.Supp. 2d 424, 429 (E.D. Pa. 2007). Generally, a parent corporation will not be liable for the conduct of its wholly owned subsidiary unless the plaintiff can rebut the presumption by showing that the corporate veil has been pierced. *Stinson v. GAF Corp.*, 757 F.Supp. 644, 646 (W.D. Pa. 1990) (*Culbreth v. Amosa Ltd.*, 898 F.2d 13, 14 (3d Cir.1990)). It is the plaintiff's burden to show that the subsidiary is the "alter ego" of the parent corporation, *Stinson*, 757 F.Supp. at 646, or that the subsidiary and its parent corporation are a "single entity." *Ziegler*, 128 F.Supp. 2d at 795. Additionally, in the context of cases involving claims of employment discrimination by a subsidiary in violation of Title VII, §1981 and the ADEA, the plaintiff may also show that the two corporations are an "integrated enterprise," *i.e.*, that both the parent and subsidiary acted as the plaintiff's employer. *De La Cruz*, 521 F.Supp. 2d at 430 (citing *Kemether v. PIAA, Inc.*, 15 F.Supp. 2d 740, 749 n.5 (E.D. Pa. 2007)).

In determining whether the subsidiary is the "alter ego" of the corporate parent, the Court

considers several factors, including "intermingling of personal and corporate affairs, undercapitalization, failure to adhere to corporate formalities, or using the corporate form to perpetrate a fraud." *Ziegler*, 128 F.Supp. 2d at 795 (quoting *Commonwealth v. Vienna Health Prods., Inc.*, 726 A.2d 432, 434 (Pa.Cmwlth.1999)). A subsidiary and corporate parent will be a "single entity" when the two corporations are "treated as one because of identity of ownership, unified administrative control, similar or supplementary business functions, involuntary creditors, and insolvency of the corporation against which the claim lies." *Id.* (quoting *Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 695 (Pa. Super. 1998)). The "integrated enterprise" test "is a four-factor test to determine if a subsidiary is a mere instrumentality of its parent: (1) is there functional integration of the operations of the parent and subsidiary; (2) are labor relations centrally controlled; (3) is there common management; and (4) is there common ownership and financial control." *De La Cruz*, 521 F.Supp. 2d at 430 (citing *Kemether v. PIAA, Inc.*, 15 F.Supp. 2d at 749). *See also Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 514 (3d Cir. 1996)).

Here, Plaintiff's Amended Complaint does not specifically allege how Defendants Sears and Sears Holdings are interrelated in order to overcome the presumption that Sears Holdings is not liable for the alleged misconduct of Sears. Indeed, Plaintiff's Amended Complaint alleges that Plaintiff was employed by Sears. (Docket No. 25 at ¶1). She does not allege that she was ever employed by Sears Holdings. Nor does Plaintiff offer any evidence that Sears, Roebuck and Co. is merely the "alter ego" of Sears Holdings, or that the two corporations are a single entity or an integrated enterprise. Because Plaintiff has not met her burden of overcoming the presumption that Sears Holdings is not liable for the conduct of its subsidiaries, the Court grants Defendants' motion to dismiss Sears Holdings as a defendant in the instant case.

## II.  Factual Background

As a threshold matter, the Court notes Plaintiff's failure to properly respond directly to Defendant's Undisputed Statement of Material Facts as required by the Local Rules of the United States District Court for the Western District of Pennsylvania.  Local Rule 56.1 (C)(1) mandates that a non-moving party's response to a motion for summary judgment must include:

> **1.  A Responsive Concise Statement:**  A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:
>
> > (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;
> >
> > (b) setting forth the basis for the denial if any contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record (See L.R. 56.1(B)(1) for instructions regarding format and annotation); and
> >
> > (c) setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment.

Furthermore, Local Rule 56.1(E) provides as follows:

> **E.  Admission of Material Facts.**  Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

W.D. Pa. L.R. 56.1(C) (2008).  In this case, Sears filed a Concise Statement of Material Facts in support of its Motion for Summary Judgment on September 8, 2008, (Docket. No. 54), and an

Appendix thereto. (Docket. No. 55). In response, Plaintiff filed a response to Defendants' Motion for Summary Judgment, setting forth separate facts in support of her claims of employment discrimination. (Docket. No. 63). Additionally, Plaintiff's Reply Brief to Defendants' Motion for Summary Judgment sets forth separate facts in support of her claims. (Docket. No. 64). However, to the extent that Plaintiff's recitation of the facts do not address Defendants' statement of facts, Defendants' statement will be deemed admitted. W.D. Pa. L.R. 56.1(E); *See GE Group Life Assur. Co. v. Turner*, Civil Action No. 05-342, 2009 WL 150944 at *1 (W.D. Pa. January 20, 2009); *Aubrey v. Sanders*, Civil Action No. 07-0137, 2008 WL 4443826 at *1 (W.D. Pa. September 26, 2008)) (citing *Jankowski v. Demand*, Civ. Action No. 06-00618, 2008 WL 1901347, at *1 (W.D.Pa. April 25, 2008); *GNC Franchising LLC v. Kahn*, Civ. Action Nos. 05-1341; 06-00238, 2008 WL 612749, at *1 (W.D.Pa. Mar.3, 2008); *Ferace v. Hawley*, Civ. Action No. 05-1259, 2007 WL 2823477, at *1 (W.D.Pa. Sept.26, 2007))(citations omitted). To the extent that Plaintiff's statement of facts controverts Defendants', the Court will consider these facts in deciding whether summary judgment should be granted, as provided by Local Rule 56.1(E). Unless otherwise indicated, the following facts are undisputed.

### 1. *Plaintiff's Personal, Educational and Employment Background*

Plaintiff is an American citizen who immigrated to the United States from India in 1979. (Docket. No. 64 at ¶ 4; Docket No. 68 at ¶ 4). At all times relevant to this cause of action, Plaintiff was an employee of Sears at its South Hills Village Mall location. (Docket No. 63 at ¶ 4; Docket No. 68 at ¶ 4). Plaintiff is noticeably of Indian descent in both appearance and accent. (Docket No. 63 at ¶ 6; Docket No. 68 at ¶ 6). After immigrating to the United States, Plaintiff began working at Sears in the South Hills Village Mall in October of 1986. (Docket No. 63 at ¶ 8; Docket No. 68 at

¶ 8). She was discharged from her position at Sears on December 3, 2005. (Docket No. 54 at ¶ 230).

Plaintiff was born on August 2, 1956. (Docket No. 63 at ¶ 5; Docket No. 68 at ¶ 5). At the time of her termination in 2005, she was forty-nine years of age. (Docket No. 63 at ¶ 5; Docket No. 68 at ¶ 5). At the time of the events leading to the Plaintiff's discharge, she had obtained the position of Lead Cashier ("CAC Lead"). (Docket No. 63 at ¶ 8; Docket No. 68 at ¶ 8). CAC Lead was considered a managerial position at Sears. (Docket No. 54 at ¶46). In this position, Plaintiff reported directly to Wayne Kohler, the Operations Manager of the South Hills Village Sears store. (Docket No. 55, Exh. G at 3; Docket No. 55, Exh. B-1 at 25). In her position as CAC Lead, the Plaintiff was responsible for overseeing associates and cashiers who worked the registers, called "cash wraps." (Docket No. 54 at ¶49; Docket No. 55, Exh. B-1 at 20). In addition to scheduling associates, Plaintiff had responsibility to train associates on the cash registers and to ensure that they were properly used. (Docket. No. 54 at ¶¶ 57-59). At the time of her termination, David Marquis was the General Manager of the South Hills Village Sears store. (Docket No. 54 at ¶3; Docket No. 63 at ¶ 16). Marquis was supervised by district manager Cindy Stuck. (Docket No. 54 at ¶6).

### 2. Sears' Employee Discount and Honesty Policies

As an employee at Sears, the Plaintiff was entitled to an employee discount. (Docket No. 55, Exh. A at 9; Docket No. 54 at ¶ 65). The policy, entitled the "Associate Discount Policy" is found in the Sears "Associate Handbook," which was in effect at the time of the events leading to the Plaintiff's termination in December 2005. (Docket No. 54 at ¶ 37). In regard to the employee discount, the policy provides:

**Associate Discount Policy**

It is the policy of the Company to grant Sears

associates a discount on purchases made with cash, check, Sears Card, Sears MasterCard, other in-house credit card, and PIN-based debit card transactions where debit cards are accepted.

**Application**
The discount applies to merchandise and services purchased and paid for by associates, spouses and their dependent children who have current discount identification.

Purchases made for later reimbursement by individuals not eligible for the discount are prohibited. This includes parents and other ineligible family members.

Please see the Associate Discount Reference Card at www.88sears.com for information on where this discount applies.

**Associate Eligibility**
The discount privilege is extended to new associates as soon as they are placed on the payroll and receive their discount identification card in the mail. They are entitled to a discount as long as they remain on the payroll.

**Discount Cards**
Salaried and full-time hourly associates, regardless of length of service and part-time associates with at least one year of service are eligible to receive one discount card for their spouse or a dependent child who is at least age 16 and additional cards for eligible student dependents. All children, including students, must qualify as dependents for Federal Income Tax purposes.

**Abuse**
It is your responsibility to ask for the discount only where you are eligible. Abuse of the discount privilege will result in discipline, up to

and including termination of employment,
and/ or revocation of the discount privilege.

(Docket No.55, Exh. A).[1]  The Associate Handbook also contained the following relevant provisions

under the heading "Workplace Conduct":

**Selling Practices**

Always do your work honestly and truthfully.
Never misrepresent Sears products or services.

Sell products and services at the appropriate
price.  Ensure customers receive all discounts
to which they are entitled.  Do not provide
customers discounts to which they are not
entitled.
            ...

**Conflicts of Interest**

Act in the best interest of Sears and Sears cus-
tomers.  Avoid working for competition unless
approved by your manager.  Do not accept gifts
that violate the company gift policy from com-
panies that do business with Sears unless
approved by your manager.  Associates should
pay the appropriate price for merchandise
purchased from Sears.  Associates should not
obtain discounts that they are not entitled to
receive.
            ...
Examples of unacceptable business conduct
that can lead to termination include, but are
not limited to: ...
            *Theft or dishonesty ...*

            *Violating associate discount policy; giving unauthorized mark
            downs to customers/associates ...*

_____

[1]          This document appears in other parts of the record, as well.

(Docket No. 55, Exh. A at 11). In regard to violations of company policy regarding sales, the handbook further provides:

**Sales Related Violations**

Failure to adhere to correct pricing fees, credit acceptance policies, check acceptance policies, point-of-sale policies and business ethics is a violation of Company policy. Appropriate disciplinary procedures, using approved documentation of performance issues for ethics or policy violations, should be applied if these policies are violated.

(Docket No. 55, Exh. A at 20).

Additionally the handbook contained the following provision with respect to potential discipline measures:

**Progressive Discipline**

The Company uses progressive discipline to address substandard performance or conduct, which if not corrected, can lead to termination. This process is intended generally to give associates the opportunity to improve their performance and avoid termination. The process does not, and is not intended to, either alter associates' at-will status or create any contractual rights of any kind, whether express or implied. The Company reserves the right, in its discretion, to skip a step or forego the process entirely.

(Docket No. 55, Exh. A at 16).

Plaintiff understood that she was required to perform her work honestly and truthfully while employed by Sears. (Docket No. 54 at ¶69). Plaintiff signed a form acknowledging receipt of the

company handbook. (Docket No. 56, Exh. A at p. 3).

3.  *"Family and Friends Night" Events*

In addition to the employee discount as outlined in the Associate Handbook, twice a year the South Hills Village Sears store held "Family and Friends Night" events, which permitted employees, their family and friends to make purchases in the store and receive additional discounts on certain items.  (Docket No. 54 at ¶ 89; Docket No. 63 at ¶ 11). One such event was held on Sunday November 13, 2005 from 6:00 to 9:00 p.m. (Docket No. 54 at ¶ 90; Docket No. 63 at ¶ 10). A flyer for the event listed the types of discounts available at the event:

> •  Save an additional 10% off regular, sale and clearance prices *
> • (Excludes Home Electronics.  Additional Exclusions apply. See below)...
>
> ... Sears Associates and Retirees can enjoy these savings in addition to their employee discount.  Just present your discount card at purchase ...

(Docket No. 55, Exh. C-3 at 47).  The exclusions to the 10% discount were listed in small print on the bottom of the flyer:

> * Not valid on advertised items (including any number of items purchased on Buy One Get One events), footwear, in-store specials ... Savings reduction is off regular & clearance prices.  In a case where the 20% discount is lower than the ad price, the register will automatically give the lower price.  Applies to new purchases & new layaways only ... Not valid on previous purchases, Home Electronics, DVD [illegible], video games, Special Purchases, Great Price Items, Levi's Jeans, Sears Auctions on ebay, outlet store purchases, landsend.com, catalog orders, fragrances ... Introductory Offers, Celestial Star diamonds, fine jewelry clearance ..."

(Docket No. 55, Exh. C-3 at 47).  According to Sears, this flyer, in addition to at least two others, were produced to announce the subject event to associates and their friends and families. (Docket

No. 54 at ¶ 91). In her deposition, Plaintiff testified that she received a flyer of this type prior to the "Family and Friends Night" events. (Docket No.55, Exh. C-1 at 17-18). Additionally, the Plaintiff testified that she understood that items marked "Introductory Offer" were excluded from the 10% discount for purposes of the "Family and Friends Night" event at issue. (Docket No. 55, Exh. C-1 at 17-19).

*4.   Plaintiff's Attempt to Purchase Earrings from Judy Forbes*

Prior to the "Family and Friends Night" event on November 13, 2005, Plaintiff became interested in purchasing a pair of diamond earrings that she noticed in a jewelry shipment. (Docket No. 55, Exh. C at 38; Docket No. 54 at ¶ 98). On Sunday November 5, 2005, Plaintiff placed the earrings on hold so that she could purchase them at a later date. (Docket No. 54 at ¶ 96; Docket No. 55, Exh. C-1 at 22). Thereafter, on Wednesday November 8, Plaintiff went back to purchase the earrings. At that time, another associate, Judy Forbes, was working the register in the jewelry department. (Docket No. 54 at ¶ 98; Docket No. 55, Exh. C-1 at 22). Plaintiff asked if she could continue to keep the earrings on hold until Sunday November 13, 2005. (Docket No. 54 at ¶ 98-99; Docket No. 55, Exh. C-1 at 41). Plaintiff testified at her deposition that she asked Forbes if she could keep the earrings on hold and purchase them on Sunday because she wanted to use a gift card to purchase them, and she did not have the gift card with her at that time. (Docket No. 55, Exh. C-1 at 41-42). Furthermore, the Plaintiff testified that she was going out of town to Philadelphia, and would not be able to return to purchase the earrings until that Sunday. *Id.*

> A.   We have a name tag around our neck, so in that pouch I had my associate discount card and I had my Sears card. So I hand [Judy Forbes] my associate discount card. When she– I think she scanned the earrings. Then I told her, I said: Oh, Judy, I don't have my gift card with me, can I keep the earrings on hold, and I can buy them on

<blockquote>
Sunday? Because I was going out of town for three days, I think. I went three or four days.
</blockquote>

According to Plaintiff, Forbes told her that the earrings could not be kept on hold for longer than twenty-four hours, so the Plaintiff informed her that she would purchase the earrings on Sunday if they were still available. *Id.* Sears contends that Forbes informed the Plaintiff that the earrings in question were an "Introductory Offer" and did not qualify for the ten percent discount. (Docket No. 54 at ¶100). The Plaintiff testified that after her conversation with Forbes, she was called to help an associate, but that Forbes later approached her and the following interaction occurred:

<blockquote>
A.     So then I came back. I was walking back, and Judy, she had a paper in her hand, something like this. ... She says: These earrings don't qualify for ten percent. I said: Judy, I'm not asking for ten percent; I don't have my gift card, so I'm not buying my earrings; I'll buy them on Sunday.
</blockquote>

(Docket No. 55, Exh. C-1 at 25). Sears disputes this interaction took place between the Plaintiff and Judy Forbes. According to Sears, Forbes showed the Plaintiff a flyer for "Family and Friends Night" and informed her that the earrings she wished to purchase did not qualify for a ten percent discount, to which Plaintiff replied, "We'll let the register decide." (Docket No. 54 at ¶101).

5.     <em>Sears' Initial Investigation of Plaintiff</em>

In her deposition, Judy Forbes could not recall that Plaintiff made this statement, she only recalled that she had reported something regarding the Plaintiff to Loss Prevention, specifically to Dennis Yusko, the store's Loss Prevention Manager. (Docket No. 55, Exh. F at 34-35; Docket No. 63 at ¶36). Forbes testified:

<blockquote>
Q.     So, your honest response is here under oath that after ... having reviewed the log, it honestly doesn't jog your memory as to any specifics?

A.     No, it doesn't.

...
</blockquote>

A.     I remember, obviously, I went to loss prevention because something did not settle with me.

A.     I recall approaching Dennis [Yusko]. I do not know a date.

Q.     And you don't remember any approach or discussion with Gupta?

A.     No.

(Docket No. 55, Exh. H at 34). Forbes did not make a written statement regarding the incident. *Id.* Dennis Yusko testified that Judy Forbes informed him that this conversation occurred, and that the Plaintiff had told Forbes to "let the register decide."(Docket No. 55, Exh. L at 10-11).  As a result Sears asserts that "Yusko assumed that [Plaintiff] appeared to be planning to engage in fraudulent action," and opened an investigation pertaining to the Plaintiff's purchase of the earrings. (Docket No 54 at ¶ 103; Docket No. 55, Exh. F at 9).  In his deposition, Yusko testified:

A.     My plan was I was going to open an investigation at that point because it appeared to be a fraudulent action.
         ...

Q.     And why did you assume that?

A.     From the statement that Judy Forbes gave me of what was going to be — of about the earrings, about what Gupta was told — said.

(Docket No. 55, Exh. L at 39).

David Marquis testified that, after an investigation of the Plaintiff was opened,[2] he read a "Family and Friends Night" invitation, including the twenty-five listed exclusions to sales individuals, including Plaintiff. (Docket No. 55, Exh. H-1 at 52-55).  Marquis further testified:

Q.     Besides reading this form, you didn't specifically have any conversations with Ms. Gupta about the item that she had selected in advance?

A.     No.

(Docket No. 55, Exh. H-1 at 56).  Plaintiff, likewise, testified in her deposition that David Marquis reviewed the "Family and Friends Night" invitation with her, and that she took a copy of the

_____

[2]     The investigation was opened after Plaintiff had asked Forbes to place the earrings on hold, but before the "Family and Friends Night" event on November 13th.

invitation to each of the cash wraps. (Docket No. 55, Exh. C-1 at 51; Docket No. 54 at ¶110).

6. *Plaintiff's Purchase of the Earrings*

On the Sunday November 13th "Family and Friends Night" Plaintiff purchased the diamond earrings, which were still on hold in the jewelry department. (Docket No. 54 at ¶ 121; Docket No. 53 at 12). She purchased them after the "Family and Friends Night" discount had been programmed into the registers. (Docket No. 54 at ¶121). At the time, a part-time associate, Tina Feehan, was working the register in the jewelry department. *Id.* When Feehan rang the earrings, the price included both the Plaintiff's associate discount and the additional ten percent "Family and Friends Night" discount. (Docket No. 54 at ¶¶ 130-31). According to Sears, "[a] computer glitch caused the register to automatically apply the Family and Friends discount," even though the earrings were marked as an "Introductory Offer" and, therefore, not eligible for the additional ten percent discount. (Docket No. 54 at 131-133). Plaintiff avers that the computer system "automatically granted" the discount, resulting in an additional $18.50 off the purchase price of the earrings. (Docket No. 63 at ¶63).

According to Plaintiff, when she realized that she had received the "Family and Friends Night" discount mistakenly, she immediately informed Feehan, telling her that it should be reversed. (Docket No. 63 at ¶34). She further testified that Feehan informed her that the computer system was granting the discount. At her deposition, Plaintiff testified as follows:

> A. ... I went to buy the earrings; they were on hold. ... Tina scanned the merchandise, and then she did my employee discount, and when she did the total, she pressed the total key on the register, it came up as ten percent special event something. And I said to her, I said: Tina, these earrings do not qualify for ten percent. I said: We should call somebody about this.
>
> Q. Were those your exact words, do you know?
>
> A. Yes.

14

Q.      Okay.

A.      She says: No, No. She said: The computer is giving it to you; computer is giving to everybody.

Q.      I wasn't completely clear on that. She said what?

A.      She said: This ten percent is coming up automatically.

Q.      Okay.

A.      I said: No. I said: Still we should call.  She said: Don't worry about it.

Q.      What did you say in response?

A.      I said: No. I said: You just complete my transaction. I said: then you call and let me know; I will come and pay fourteen dollar and fifty cents.

(Docket No. 55, Exh. C, p. 130: 21-25; p. 131:1-20).  At her deposition, Tina Feehan could not specifically recall anything about the transaction involving Plaintiff and the earrings.  (Docket No. 63 at ¶35; Docket No. 68 at ¶35).

The day after the transaction, November 14, 2005, Plaintiff attempted to inform other sales associates about the transaction, in an attempt to fix the situation. (Docket No. 63 at ¶38; Docket No. 54 at ¶170).  At her deposition, Plaintiff testified:

Q.      Okay. It says on your next working day you went to Judy Forbes and asked her if Tina was able to call the price line.
            Are those the exact words - -

A.      Yes.

Q.      - - you asked?

A.      I said: Did Tina call? She says: No. She said she didn't know. I said: Do you know how to fix it?  She said: No. She said just to go. She will start raising her hands, so I wasn't sure if she's calling the security or she - - why was she - - she would always raise her hands like this.

Q.      Okay. Judy Forbes you mean?

A.      Yes.

            ....

Q.       - - you asked Tina again, and she told [you] the same thing.

A.      Right.

Q.      What did she tell you?

A.      I said to her, I said: Tina, I said, did you call; I want to pay fourteen fifty. She was with her friend. She was either punching in, coming to work or going out for lunch. I don't know what she was doing.

            ....

| A. | I said: Tina, I said, I want to pay fourteen dollars and fifty cents. I said: Did you find out; did you call? She says: Don't worry about it, I'll take care of it. She says: If anybody asks me, I will tell them what happened. |
| --- | --- |
| Q. | Did you understand what she meant by if anyone asks me, I'll explain - - |
| A. | She meant the management, if anybody comes and says - - she said she will tell them that I wanted to pay fourteen dollar fifty cents. |
| Q. | Okay. |

(Docket No. 55, Exh. C at 156:1-24; 158:10-15; 159:1-10). The day after Thanksgiving, November 26, 2005, Plaintiff scanned other earrings also marked Introductory Offer, which came up with an extra 10% off. (Docket N0. 54 at ¶177). As such, Plaintiff assumed that someone would be able to fix her transaction, so she asked Feehan to fix her transaction again on November 26, 2005. (Docket No. 54, Exh. C at ¶179). Other than her attempts to fix the transaction with Feehan, Plaintiff made no other effort to "fix" the ten percent discount. (Docket No. 54 at ¶184; Docket No. 63 at ¶38).

### 7. Sears' Response to Plaintiff's Earring Purchase

The day following the transaction, November 14, 2005, Dennis Yusko pulled the transaction from the register and determined that Plaintiff had received the extra 10% discount on the earrings purchase. (Docket No. 54 at ¶159). Yusko informed his immediate supervisor, David O'Brien, the Multi-Unit Loss Prevention Manager. (Docket No. 54 at ¶160). At O'Brien's suggestion, Yusko was directed to secure a written statement from Forbes, but Forbes would not provide a statement. (Docket No. 54 at ¶¶162-63). Yusko then monitored Plaintiff's activity from November 14, 2005 through November 28, 2005, at which time O'Brien came to the South Hills Village store to interview Plaintiff. (Docket No. 54 at ¶¶168-69).

O'Brien interviewed Plaintiff on November 28, 2005 regarding her purchase of the earrings on November 13, 2005. At that time, Plaintiff informed O'Brien that she understood there was a mistake at the time she purchased the earrings and that she had tried to have either Feehan or Forbes

fix the mistake. (Docket No. 54 at ¶¶197-201). O'Brien took a written statement from Plaintiff.

Plaintiff asked him "What should I write?" (Docket No. 54 at ¶203). Plaintiff proceeded to write

and sign "the gist" of what O'Brien told her:

> I Anita Gupta make this statement to Dave O'Brien and Joanne Faust[.] No
> threats or promises have been made to me to obtain the statement [.]

> I purchased earrings on Family and Friends Night. They came up on sale. I
> bought the earrings . 10% was not valid on that item but when Tina did the total it
> came with [sic] 10% off. I paid for the earring [sic]. I would like to fix this by
> paying the difference. The difference of [$]18.50. I knew 10% was not valid prior
> to the purchase.

(Docket No. 54 at ¶¶204-206; Docket No. 55, Exh. C-15). At this time, Plaintiff also signed a

Promissory Note on which she agreed to pay back $18.50 (Docket No. 54 at ¶208), which she paid

on December 2, 2005. (Docket No. 54 at ¶210).

On November 29, 2005, store manager David Marquis contacted Sears' Associate Service

Center. He spoke to Roberta Proper, a Human Resources Consultant and informed her of Plaintiff's

statement after her interview with O'Brien. (Docket No. 54 at ¶¶211-212). Additionally, Marquis

informed Proper that he had spoken to his District Manager, Cindy Stuck, who was in favor of

terminating Plaintiff.[3] According to Sears, Proper directed that Tina Feehan be interviewed regarding

Plaintiff's transaction. (Docket No.¶¶214-15). Yusko interviewed Feehan. (Docket No. 54 at ¶216).

At his deposition, Dennis Yusko testified that he could not recall any relevant information from the

interview with Feehan. (Docket No. 55, Exh. L at 92). Feehan testified that she recalled being

interviewed by someone from Loss Prevention but she could not recall to whom she spoke. She also

---

[3]

Proper and others at the Associate Service Center are employed by Sears in Illinois and
provide guidance to store-level management across the country regarding human relations issues and
application of Sears' policies and procedures. (Docket No. 54 at ¶187; Docket No. 55, Exh. A).

testified that she did not provide a written statement (Docket No. 55, Exh. E at 18-25), and could not recall the November 13th earring transaction.

> Q.    All of the questions counsel just asked of you regarding statements made by Ms.
>        Gupta, is it fair to say you don't recall what conversation took place between the two
>        of you?
> A.    Yeah, I don't really recall.

(Docket No. 55, Exh. E at 16-20). Feehan described herself as a " really bad associate" (Docket No. 55, Exh. E at 22-23), and stated that she "was never really a good salesperson." (Docket No. 55, Exh. E at 23). Sears has provided no further information regarding Feehan's interview. Yet Proper determined that Plaintiff had "defrauded the company knowingly" and, therefore, she approved Plaintiff's termination. (Docket No. 54 at ¶¶ 219-222). However, Feehan was not terminated for processing the transaction. (Docket No. 54 at ¶217).

Marquis then proceeded to terminate Plaintiff on December 3, 2005 as a result of the November 13, 2005 transaction involving the earrings. (Docket No. 54 at ¶230).

### 8.    Sears' Harassment Policy

In regard to harassment in the workplace, including harassment based on race, color, age and national origin, Sears' employee handbook provides:

**Workplace Harassment**

Sears prohibits any workplace conduct or
harassment based on race, color, religion, age,
national origin, disability, citizenship status,
veteran status, marital status, sexual orienta-
tion, gender identity, pregnancy, or any other
reason prohibited by law.

(Docket No. 55, Exh. A at 13). Sears associates receive a copy of the handbook and are required to sign an acknowledgment which states:

By my signature, I acknowledge that I have received and read a copy of the Sears, Roebuck and Co. Associate handbook and agree to comply with the rules, policies, and standards set forth in the handbook and Company policy.

(Docket No. 55, Exh. A at 2).

## III. Procedural Background

On August 28, 2007, the Plaintiff filed a First Amended Complaint (Docket No. 25), alleging employment discrimination in violation of 42 U.S.C. § 1981; age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA"); racial and national origin discrimination in violation Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et seq.; Condoning a Hostile Work Environment in violation of 42 U.S.C. §1981 and §2000e; breach of contract; and intentional infliction of emotional distress. On September 17, 2007, Sears filed a Motion to Dismiss Plaintiff's claim of intentional infliction of emotional distress and Brief in Support. (Docket Nos. 28-29). By Order dated November 2, 2007, the Court denied Sears' Motion to Dismiss Plaintiff's Amended Complaint without prejudice. (Docket No. 34).

Discovery in this case was completed on June 30, 2008 (Docket No. 30). Sears filed the instant Motion for Summary Judgment, Brief in Support and Concise Statement of Material Facts on September 8, 2008. (Docket Nos. 52-54). Plaintiff filed her Response to Sears' Motion for Summary Judgment and Brief in Response on October 22, 2008. (Docket Nos. 63-64). Thereafter, Sears filed a Reply in further support of its motion for summary judgment and in response to Plaintiff's response brief on November 7, 2008. (Docket No. 69). Sears' motion, having been fully brief, is now ripe for disposition.

## IV.    Standard of Review

Summary judgment under the Federal Rules of Civil Procedure 56(c) is appropriate "if the

pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Woodside v. School Dist. Of Philadelphia Bd. of Educ.*, 248 F.3d 474, 477 (3d Cir. 2001)(citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved [her] case by the quality and quantity of evidence required by the governing law or that [she] did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'- that is, pointing out to the District Court- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, then the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.3d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue of fact for trial." *Simpson v. Kay Jewelers*, 142 F.2d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)).

In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence

'is to be believed and all justifiable inferences are to be drawn in [their] favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255 (1986)); *see also Doe v. County of Centre, Pa*, 242 F.3d 437, 446 (3d Cir. 2001) (providing that "a court must take the facts in the light most favorable to the nonmoving party, the [plaintiff], and draw all reasonable inferences in their favor") (citation omitted).

## V.      Discussion

In its Memorandum of Law in Support of this motion (Docket No. 53), Sears makes several arguments as to why the Plaintiff's claims cannot withstand summary judgment. Specifically, Sears argues that it is entitled to summary judgment on the Plaintiff's ADEA claims, insofar as Plaintiff cannot establish a prima facie case of age discrimination. (Docket No. 53 at 4). Sears further argues that Plaintiff's race and national origin discrimination claims must fail because the Plaintiff has offered no direct evidence of discrimination, and has failed to rebut Sears' proffered legitimate non-discriminatory reason for her termination.  (Docket No. 53 at 5-14).  Additionally, Sears contends that it is entitled to summary judgment on Plaintiff's hostile work environment claims because she has failed to offer any facts supporting such claims. (Docket No. 53 at 14-16).  Sears then argues that Plaintiff's breach of contract claim fails because (1) no employment contract existed between the parties; and (2) her breach of contract claim is barred by the PHRA. (Docket No. 53 at 17-18). Finally, Sears argues that the Plaintiff's intentional infliction of emotional distress claim fails because (1) her claim is barred by the Pennsylvania Workers' Compensation Act; and  (2) because she has not shown that Sears engaged in extreme and outrageous conduct. (Docket No. 58 at 18-20). The Court will address each of these arguments, in turn.

A.      *Plaintiff's §1981 and Title VII Claims*

*1.      McDonnell Douglas Burden Shifting Framework*

In regard to Plaintiff's claims of discrimination brought pursuant to §1981 and Title VII, Sears contends that these claims must fail because Plaintiff cannot rebut its legitimate, non-discriminatory reasons for her termination. (Docket No. 53 at 5-14).  Specifically, Sears argues that it "terminated [Plaintiff's] employment for reasons wholly unrelated to her age, race, color or national origin," and Plaintiff cannot meet her required burden of rebutting these reasons. (Docket No. 53 at 5). In response, Plaintiff contends that the reasons proffered by Sears are merely pretext for discrimination. (Docket No. 63 at 11).

As previously discussed, Plaintiff is a native of India who immigrated to the United States in 1979.  (Docket No. 64 at ¶4; Docket No. 68 at ¶68).  She is noticeably of Indian descent in both appearance and accent. (Docket no. 63 at ¶4; Docket No. 68 at ¶4). Plaintiff claims that she was discriminated against based on her race and national origin. (Docket No. 63-64).

Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ...

42 U.S.C. §2000e-2.  Additionally, §1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981. As a threshold matter, the Court notes that, because the legal elements of an

employment discrimination claim brought under §1981 and Title VII are the same, these claims will be treated under the same analysis. 42 U.S.C. §2000e; 42 U.S.C. §1981; *see also Johnson v. Resources for Human Development*, 787 F.Supp. 35 (E.D. Pa. 1995) (citing *O'Brien v. City of Philadelphia*, 837 F.Supp. 692, 699 (E.D. Pa. 1993)).

Where an employee has only indirect evidence of discrimination, claims brought under §1981 and Title VII are analyzed under the *McDonnell Douglas* burden shifting scheme. *See Stewart v. Rutgers, the State University*, 120 F.3d 426, 432 (3d Cir. 1999) (citing *Patterson v. McClean Credit Union*, 491 U.S. 164, 186 (1989). As such, Plaintiff bears the initial burden of proving a prima face case of discrimination by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (citing *McDonnell Douglas*, 411 U.S. at 802). In order to prove a prima facie case of race and national origin discrimination, a plaintiff must show by a preponderance of the evidence: (1) that she belongs to a protected class; (2) that she was qualified for the position at issue; (3) that she was discharged; and (4) that she was terminated "under circumstances giving rise to an inference of discrimination." *Waldron v. SL Laboratories, Inc.*, 56 F.3d 491, 494 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Once the plaintiff has met this initial burden, by establishing a "minimal" prima facie case, there is a presumption of discrimination and the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *Id.* at 494. If the defendant proffers a legitimate, non-discriminatory reason for the plaintiff's discharge, the burden of production will shift back to the plaintiff to prove with sufficient facts that the stated reasons were mere pretext for discriminatory intent. *Id.*; *see also Hicks*, 509 U.S. at 506-507. "While the burden of production shifts under this framework, the plaintiff always bears the burden of persuasion of establishing

intentional discrimination." *Burdine*, 450 U.S. at 256. In the context of the instant motion, Sears does not dispute that Plaintiff has established a prima facie case of discrimination based on race, color and national origin. (Docket No. 53 at 3). Sears does not dispute that Plaintiff is a member of a protected class, as she is Indian. Nor does it dispute that she was discharged from a position, for which she was qualified, under circumstances giving rise to an inference of discrimination. (Docket No. 53 at 3). As a result, the Court will turn to Sears' proffered legitimate non-discriminatory reason for the Plaintiff's termination, as required by the burden shifting scheme.

2.      *Sears' Proffered Legitimate, Non-Discriminatory Reason for the Plaintiff's Termination*

Under the *McDonnell Douglas* burden shifting framework, the employer will meet its burden of showing a legitimate, non-discriminatory reason for the adverse employment action by offering evidence "which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *Hicks*, 509 U.S. at 508). While a defendant's burden at this stage is relatively light, *Id.*, a defendant is required to offer a clear and specific reason for the termination in order to afford the plaintiff-employee a fair opportunity to pierce the proffered reason with facts of record. *Burdine*, 450 U.S. at 256. The determination of whether a defendant has met its burden of production with regard to a legitimate, non-discriminatory reason for a plaintiff's termination "can involve no credibility assessment." *Hicks*, 509 U.S. at 509. Rather, if Sears has offered evidence of a non-discriminatory reason for the Plaintiff's termination, Sears has sustained its burden and the burden will shift to the Plaintiff to rebut that evidence. *Id.*

In this case, Sears has offered one reason for Plaintiff's termination: that she made a purchase

and received an improper discount in violation of Sears' discount and honesty policies. (Docket No. 53 at 5). In support, Sears has offered substantial evidence that Plaintiff purchased an item and accepted a discount that she understood did not apply to the transaction. (Docket No. ¶¶212-13). Indeed, Plaintiff admits that she knew the discount should not have been received, as she testified that she attempted to correct the transaction. (Docket No. 53 at ¶38). The Court finds that said reason is enough for Sears to meet its burden of proffering a legitimate non-discriminatory reason for Plaintiff's discharge. Because Sears has done so, the burden now shifts back to Plaintiff to produce sufficient evidence that Sears' proffered reason is merely pretext for discrimination. *Burdine*, 450 U.S. at 256.

3. *Plaintiff's Rebuttal of Sears' Legitimate Non-Discriminatory Reason for her Termination*

To survive summary judgment on her race and national origin discrimination claims, the Plaintiff, "must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citing *Hicks*, 509 U.S. at 510-11; *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)) (citations omitted). The United States Court of Appeals for the Third Circuit further explained the standard in *Fuentes*:

> [B]ecase the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons, ... a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing

evidence, whether circumstantial or direct, that discrimination was more likely than
not a motivating or determinative cause of the adverse employment action.

*Id.* at 764 (emphasis in original).

A plaintiff will satisfy the first prong of this standard by demonstrating "such weaknesses,
implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proferred
legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of
credence.'" *Id.* (quoting *Ezold*, 983 F.2d at 531) (emphasis in original). *See also Ryder v.
Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir.1997). A plaintiff may meet the latter prong
by showing that Sears either (1) previously discriminated against Plaintiff; (2) discriminated against
other persons within the Plaintiff's protected class; or (3) treated similarly situated individuals
outside the protected class more favorably than Plaintiff. *Jones v. School Dist. of Philadelphia*, 198
F.3d 403, 412 (3d Cir. 1999) (citing *Simpson*, 142 F.3d at 645) (citations omitted). Because it is rare
that a plaintiff will be able to provide direct evidence of an employer's discriminatory intent, a
plaintiff must prove her case through these types of circumstantial evidence. *Blackshear v. City of
Wilmington*, 15 F.Supp. 2d 417, 426-27 (D.Del. 1998) (citing *Sheridan v. E.I. Du Pont de Nemours
and Co.*, 100 F.3d 1061, 1066-67 (3d Cir. 1996)). The Court of Appeals has held:

> To establish circumstantial proof, the plaintiff first must present evidence that each
> of the defendant's reasons is pretextual, viz., each reason was a 'post hoc fabrication
> or otherwise did not actually motivate the action.'

*Ryder*, 128 F.3d at 136 (quoting *Fuentes*, 32 F.3d at 765). Said circumstantial evidence may be
"combined by the factfinder with the evidence used to support the plaintiff's prima facie case" and
the factfinder "may reasonably infer that the defendant discriminated against the plaintiff ..." *Id.* at
136 (citing *Hicks*, 509 U.S. at 571). At this stage, the Court is not authorized to weigh the evidence

or to make determinations as to credibility. Fed.R.Civ.P.56; *Ryder*, 128 F.3d at 536. Rather, if Plaintiff offers sufficient evidence to discredit Sears' articulated reasons for her termination, summary judgment will not be appropriate. *Fuentes*, 32 F.3d at 764.

In support of her claim that Sears' legitimate non-discriminatory reason for her discharge is merely pretext, Plaintiff has offered evidence that several individuals outside of her protected class were treated more favorably for similar policy violations: Terri Hoffman, Lori Muic, Patricia Haber-Borden and Vanessa Myers. (Docket No. 63 at ¶20; Docket No. 64 at 5-11).

Patricia Haber-Borden was a Caucasian sales associate at the South Hills Village Sears. At the time of Plaintiff's termination, Haber-Borden was under the age of forty. (Docket No. 54 at ¶279). During the November 13, 2005 "Family and Friends Night" event, Haber-Borden gave her associate discount to her cousin, which she admitted, but informed Sears that she did not know it violated store policy. (Docket No. 54 at ¶280). She was not terminated, but was given a final warning and required to repay the improper discount. (Docket No. 54 at ¶282). According to David Marquis, he did not terminate Haber-Borden "because she offered a reasonable explanation for believing her cousin could use the discount and because she had been with Sears for a very short time." (Docket No. 54 at ¶283).

Lori Muic is also a Caucasian female who was a sales associate at the South Hills Village Sears store. Plaintiff did not identify Muic's age or race in her deposition and Sears has not offered evidence of her age. (Docket No. 55, Exh. 55 at 184-187). Plaintiff testified that she had heard from another associate that Muic was attempting to return a jacket bought from another Sears location that had been on sale when purchased, but was not on sale at the South Hills Village store. (Docket No. 54 at ¶¶262-64). Muic did not end up returning the item at the South Hills Village store because

Plaintiff informed her that they would need manager approval to do the exchange properly. (Id.) Plaintiff informed Yusko about the transaction and no action was taken against Muic. (Docket No. 54, at ¶¶268-69).[4]

Vanessa Myers is another Caucasian female who was a sales associate at Sears during 2005. Plaintiff could not specifically identify Myers's age, but she testified that she knew that it was under forty- around thirty-five or thirty- seven- "because she used to say it." (Docket No. 55, Exh. C at 107). Sears has offered no evidence of Myers' age. While in the Jewelry Department, Plaintiff saw an e-mail stating that an item of jewelry had been incorrectly advertised as $99.99, instead of $129.99 and should not be sold for the advertised price. (Docket No. 54 at ¶252). Plaintiff was later called by radio to the jewelry department to approve the sale of this item to Myers for the advertised price of $99.99. Plaintiff called Marquis for approval, which he gave. (Docket No. 54 at ¶254). After Plaintiff informed Marquis that Myers bought the item at the sale price, despite the e-mail that had gone out to associates, Plaintiff testified that Marquis simply said "okay" and walked away. (Docket No. 54 at ¶259).

Terri Hoffman is yet another Caucasian female who was also a sales associate at Sears in

---

[4]

Sears argues that the evidence Plaintiff offers in regard to this incident involving Lori Muic is inadmissible hearsay and, therefore, is insufficient evidence to defeat Defendant's summary judgment motion. (Docket No. 53 at 12). The Court agrees that this evidence is hearsay and should thus not be considered evidence of pretext. *See Blackburn v. UPS, Inc.*, 179 F.3d 81, 103 (3d Cir. 1999). However, the Court is not permitted to parse each issue in determining whether Plaintiff has adduced sufficient evidence of pretext. *See Snooks v. Duquesne Light Co.*, No. 08-1689, 2009 WL 449154 at *5 (3d Cir. 2009). Indeed, the fact that evidence of one of Plaintiff's proffered comparators is inadmissible will not dispose of the pretext issue. Rather, the Court must review the evidence of record in its entirety, in order to determine whether there is sufficient evidence from which a reasonable factfinder could infer that discrimination was a motivating factor in terminating Plaintiff. *Id.* (citing *Fuentes*, 32 F.3d at 764).

2005. Plaintiff did not testify as to Hoffman's age. However, Defendants asserted that she was in her late thirties to early forties at the time in question. (Docket No. 54 at ¶271). Hoffman worked in the appliance department at the South Hills Village store. *Id.* On June 4, 2005, she purchased a stainless steel range with a regular price of $949.99 that was coming up in the register with a price of $119.99. (Docket No. 54 at ¶272). Hoffman made the purchase despite the very large price difference. Hoffman informed Marquis that she believed the price of $119.99 was correct, as the sides of the range were white instead of steel-colored. (Docket No. 54 at ¶275). Marquis permitted Hoffman to pay the difference. Hoffman was not terminated because she "offered a reasonable explanation for believing the price was correct." (Docket No. 54 at ¶276).

In order to show pretext, a plaintiff may rebut a defendant's proffered legitimate non-discriminatory reason by showing that she was treated differently than similarly-situated employees outside the protected group, thus showing that the defendant's decision to terminate was motivated by discrimination. *Simpson v. Kay Jewelers, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998); *see also Fuentes*, 32 F.3d at 764. "In determining whether similarly situated nonmembers of a protected class were treated more favorably than [the Plaintiff], the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action. *Simpson*, 142 F.3d at 647; *see also Shontz*, 2008 WL 793878 at *7. While a plaintiff may not selectively choose a comparator for purposes of establishing pretext, the evidence will be looked at as a whole to determine whether the decision to terminate was affected by Plaintiff's race and/or national origin. *Simpson*, 142 F.3d at 646 (citing *Ezold v. Wolf, Black, Schorr and Solis-Cohen*, 983 F.2d 509, 539 (3d Cir. 1992)).

Here, Plaintiff has offered evidence that several employees outside of her protected class

made purchases and received improper discounts, but were not terminated as a result of those purchases.[5] The Court finds two comparators significantly relevant in this inquiry: Patricia Haber-Borden and Terri Hoffman. Plaintiff proffers, and Sears admits, that Patricia Haber-Borden gave her employee discount to her cousin on the exact same day that Plaintiff purchased the earrings, despite the fact that Sears' handbook clearly states:

> **Application**
> The discount applies to merchandise and serv-
> ices purchased and paid for by *associates,*
> *spouses and their dependent children* who
> have current discount identification.

(Docket No. 55, Exh. A at 31) (emphases added). According to Sears, because Haber-Borden offered a "reasonable explanation" for the violation, *i.e.*, that she believed her cousin was permitted to use

---

[5]

Sears relies on *Shontz v. Rite Aid of Pa., Inc.*, No. 05-1673, 2008 WL 793878 at \*10 (W.D. Pa. Mar. 24, 2008) in support of its claim that, because Plaintiff admits that she was not entitled to the 10% Family and Friends Night discount, she cannot establish pretext. (Docket No. 53 at 9). That case, however, is distinguishable from the instant case. In *Shontz*, the plaintiff, a regional manager of Rite Aid stores, gave an unauthorized individual access to a trade show by permitting that individual to use another employee's credentials to enter the show. *Id.* at \* 3. The plaintiff admitted that he knowingly violated company honesty policy in doing so. *Id.* at \*9. There, the Court found insufficient evidence of pretext under both prongs of the *Fuentes* analysis. Specifically, in regard to the first prong, the Court held that Plaintiff failed to adduce any evidence which would permit a reasonable factfinder to find that the defendant's legitimate, non-discriminatory reasons for the plaintiff's termination were pretext, as the plaintiff admitted that he had violated company policy and he offered no evidence of implausibilities or inconsistencies to otherwise discredit that reason. *Id.* at \*10. As to the second prong, the Court found insufficient evidence that the plaintiff had been previously discriminated against, or that he was treated less favorably than individuals outside his protected class. *Id.* at \*11. Unlike the instant case, the plaintiff was unable to offer any evidence to support his claim that his termination was motivated by discrimination.

While the Court agrees, that Plaintiff has failed to offer evidence of pretext under the first prong of *Fuentes*, as she admits that she was terminated for accepting an improper discount, she has offered evidence sufficient to satisfy *Fuentes*' second prong (i.e., she has offered evidence such that a factfinder could reasonable believe that discrimination was more likely than not a motivating fact or cause of Plaintiff's termination), as discussed *supra*.

the discount, she was not terminated, but given a final warning and required to pay back the discount. (Docket No. 54 at ¶283). To the contrary, Sears argues that Plaintiff was aware of the associate discount policy found in its handbook, yet she purchased the earrings and accepted a 10% "Friends and Family Night" discount. (Docket No. 54 at ¶280). The Court notes that the "Friends and Family Night" discount that Plaintiff received is not addressed in the Associate Handbook, as the associate discount policy is. Rather, notice of the exclusion of "Introductory Offers" was printed in small print at the bottom of a flyer and Plaintiff was informed of the sale exclusions by David Marquis in a meeting. (Docket No. 55, Exh H-1 at 56). Furthermore, Plaintiff did not present her employee discount card and improperly accept an employee discount in violation of store policy, as Haber-Borden did. Rather, the register automatically applied the discount. (Docket No. 54 at 131). Plaintiff testified (and Sears does not dispute) that she attempted to have Tina Feehan correct the discount at the time of the purchase. (Docket No.55, Exh. C, p. 130:21-25; p. 131:1-20; Docket No. 63 at ¶35; Docket No. 68 at ¶35). Based on these facts, the Court finds sufficient evidence that Haber-Borden was treated more favorably than Plaintiff insofar as she violated the associate discount policy, but was not terminated, as was Plaintiff.

Additionally, Sears admits that Terri Hoffman, an associate in the appliance department, purchased a range with a regular price of *$949.99* after she realized that the range was ringing up *$119.99*. (Docket No. 54 at ¶272). Wayne Kohler approached Hoffman because he believed that Hoffman may have sold the range to herself and a friend at an inappropriate price, in violation of the policy that requires that associates "[s]ell products and services at the appropriate price." (Docket No. 54 at ¶273). However, Hoffman informed Kohler that she thought the price was ringing up correctly as a liquidated item because the color was different. (Docket No. 54 at ¶275). Because

Sears found this to be a "reasonable explanation," Hoffman was not disciplined, but was, at Marquis' direction, permitted to pay the difference in price. (Docket No. 54 at ¶276). Similar to Hoffman, Plaintiff purchased an item that the register incorrectly discounted, *$18.50* less than the actual price. Plaintiff noted the discount at the time of purchase, attempted to have it changed, but was informed by Tina Feehan that the price was coming up less for all customers. (Docket No. 55, Exh. C, p. 130:21-25; p. 131: 1-20). According to Sears, Hoffman also received the discount based on a problem in the register (Docket No. 54 at ¶272), yet Hoffman was not disciplined. (Docket No. 54 at ¶276). Plaintiff, however, was terminated for her transaction.

The Court also finds it relevant that Sears did not terminate Tina Feehan for failing to "[s]ell products and services at the appropriate price" in regard to Plaintiff's earrings, when Feehan was the sales associate who rang the transaction. Significantly, Feehan was not terminated nor disciplined for violating store policy, (Docket No. 54 at ¶217), while Plaintiff was ultimately discharged after over twenty years of service. (Docket No. 54 at ¶31).

Moreover, at the time of Plaintiff's termination, Sears had a progressive discipline policy, which was intended to give employees "the opportunity to improve their performance and avoid termination," but which also gave Sears the discretion to "skip or forego the [progressive discipline] process entirely." (Docket No. 55, Exh. A at 16). Sears, in its discretion, made the decision to terminate Plaintiff, but not to terminate several younger Caucasian associates for similar policy violations. In light of these facts, the Court believes that Plaintiff has offered sufficient evidence that similarly situated individuals outside of Plaintiff's protected class were treated more favorably than she. *See Lake v. AK Steel Corp.*, Civ. A. No. 03- 517, 2006 WL 1158610 at *33 (W.D. Pa. May 1, 2006) (holding that, "establishing a claim of pretext is not merely limited to a comparison of

treatment between similarly situated individuals in and outside the protected class" but that the evidence will be viewed as a whole in order to determine whether pretext is a reasonable inference). *See also Jafar v. Kings College*, No. Civ. A. 04- 862, 2006 WL 1864591 at * 5 (M.D. Pa. June 30, 2006) (citing *Delli Santi v. CNA Insurance Co.*, 88 F.3d 192, 203 (3d Cir.1996) ("A plaintiff can establish that enforcement of a policy is pretext for discrimination if that policy was not enforced against similarly situated individuals outside the protected class"). Indeed, because Plaintiff has identified several individuals outside of the protected class who were treated more favorably than she for similar policy violations, or for offenses more directly in violation of Sears' written associate discount policy, the Court finds that there is sufficient evidence such that a jury could infer that Sears' proffered reasons for Plaintiff's termination were pretext for discrimination.

While Sears argues that Plaintiff cannot establish pretext, as several individuals at Sears were likewise terminated for "dishonesty," the Court finds that the individuals cited by Sears committed infractions significantly different from Plaintiff's improper $18.50 discount, which the register applied. In particular, David Jennings, an African American individual, used his discount card to purchase a television for someone other than those individuals stated in the Associate Handbook. (Docket No. 54 at ¶285). Hence, the improper use of the associate discount resulted in a discount of $149.49 for an unauthorized person. (Docket No. 54 at ¶285). Additionally, Sears offers Zachary Kelly, who was terminated for taking commission for a sale he did not make, by actually putting his employee number into the cash register. (Docket No. 54 at ¶288). Sears also refers to Nicholas Mills, Donald King, Josh Krupp, Christopher Panucci and Robert Perchersky, all white males who were terminated for giving their associate discounts to unauthorized persons. (Docket No. 54, at ¶¶290-306). Unlike these individuals, however, Plaintiff was not terminated for using her associate

discount policy inappropriately, in violation of written policy. Rather, she was terminated for accepting an additional discount, which the register automatically applied, on an item that was marked as excluded from the "Family and Friends Night" discount.

As such, regardless of this evidence of other terminated employees offered by Sears, reading the facts in a light most favorable to Plaintiff, there is sufficient evidence that individuals outside Plaintiff's protected class were treated more favorably. Therefore, there is sufficient evidence from which a reasonable jury could find that Sears' decision to terminate Plaintiff was motivated by discrimination. Sears' motion for summary judgment as to Plaintiff's race and national origin discrimination claims is, therefore, denied.

B.    *Plaintiff's ADEA Claims*

In regard to the Plaintiff's ADEA claims, Sears argues that the Plaintiff cannot establish a prima facie case of age discrimination under the ADEA. (Docket No.53 at 4).  Specifically, Sears contends that the Plaintiff cannot establish that an individual younger than she replaced her in the CAC Lead position and, as a result, she cannot satisfy the final prong in establishing a prima facie case of age discrimination under the ADEA.  (Docket No. 53 at 4).  Rather, Sears argues that the Plaintiff "was 49 years old when her employment was terminated on December 3, 2005 ... [her] position was filled by Judith Gardner, who was age 60 at the time." (Docket No. 53 at 4) (docket citations omitted).  In response, the Plaintiff contends that she has established a prima facie case of age discrimination, because "[i]n fact, a younger sales associate did replace [the Plaintiff] after her discharge, which has not been refuted by [Sears]." (Docket No. 63 at 11).  Furthermore, the Plaintiff argues that Sears' proffered reasons for her termination were merely pretext for age discrimination. (Docket No. 63 at 11).

The Age Discrimination in Employment Act makes it unlawful for an employer to:

fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ...

29 U.S.C. §623(a)(1). Because the Plaintiff has not offered any direct evidence of discrimination, but rather has argued that the reasons for her termination were mere pretext, the parties' burdens in regard to the Plaintiff's ADEA claims are, like her Title VII and §1981 claims, measured by the burden shifting framework as outlined in *McDonnell Douglas Corp.v. Green*, 411 U.S. 792 (1973). *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000) (citing *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 234 (3d Cir. 1999)). As previously discussed, under said framework, "[t]he plaintiff bears the initial burden of offering evidence that is sufficient 'to create an inference that an employment decision was based on a discriminatory criterion illegal under the [ADEA].'" *Maxfield v. Sinclair Intern*, 766 F.2d 788, 791 (3d Cir. 1985) (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 (1977)); *see also Stanziale*, 200 F.3d at 105. Once a plaintiff has met this burden, a presumption of discrimination is created, which the defendant must then rebut by articulating a legitimate non-discriminatory reason for the adverse employment action. *Stanziale*, 200 F.3d at 105 ("'the burden of production (but not the burden of persuasion) shifts to the defendant, who must offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, non-discriminatory reason for the [termination].'") (quoting *Showalter*, 190 F.3d at 234) (quotations omitted). Once the defendant has met its burden by articulating a legitimate non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to show that the stated reasons were merely pretext for discrimination.

35

*Id.* at 106 (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) and

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). "At all times the plaintiff-employee has the

burden of [persuasion] ... that age was a determinative, though not necessarily the sole, factor in the

defendant-employer's decision to take an adverse employment action against the employee." *Gray*

*v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (citing *Turner v. Schering-Plough*

*Corp.*, 901 F.2d 335, 342 (3d Cir. 1990)).

### 1.     *Plaintiff's Prima Facie Case under the ADEA*

In order to establish a prima facie case of age discrimination under the ADEA, the Plaintiff

must show: (1) that she is a member of the protected class, *i.e.*, over forty years of age; (2) that she

was qualified for the position from which she was terminated; (3) that she suffered an adverse

employment action; and (4) that she was terminated under circumstances giving rise to an inference

of discrimination. *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 n. 5 (3d Cir. 1998). *See also Shontz*

*v. Rite Aid of Pennsylvania, Inc.*, Civil Action No. 05- 1637, 2008 WL 793878 at *6 (W.D. Pa.

March 24, 2008) (citing *Steward v. Sears Roebuck & Co.*, 231 Fed. Appx. 201, 210 n. 5 (3d Cir.

2007)).

For purposes of these summary judgment proceedings, Sears does not dispute that the

Plaintiff has established that she is a member of a protected class, that she was qualified for the

position from which she was terminated, and that she suffered an adverse employment action. The

issue presented by Sears' motion, therefore, is whether the Plaintiff has satisfied the final element

of a prima facie case of age discrimination under the ADEA.

Initially, the Court notes that Sears argues that the United States Court of Appeals for the

Third Circuit requires that the Plaintiff show that she was replaced by an individual sufficiently

younger than she in order to establish a *prima facie* case of age discrimination. Sears argues that Plaintiff has failed to meet this burden because (1) she could not identify the individual who replaced her and (2) it has offered evidence that Plaintiff was replaced by someone older than Plaintiff.

In her deposition, Plaintiff could not identify her replacement:

> Q ... [W]ho is the sales associate who you contend is much younger than you, that Sears hired?
> A. No, I don't know. I don't know who they hired later on.
> Q. Do you know the age of anyone they hired later on?
> A. No.
> Q. And do you know the salary of anyone they hired later on?
> A. No.

(Docket No. 55, Exh. D at 52-53). Furthermore, in regard to the Plaintiff's replacement, Sears has provided information, by way of its First Supplemental Response to Plaintiff's First Set of Interrogatories (Docket No. 55, Exh. M), that the Plaintiff's position at the time of her termination, CAC Lead, was filled by Judith Gardner, who was sixty-years-old at the time, from January 1, 2006 until April 31, 2006. (Docket No. 55, Exh. M at ¶ 23). Sears further provided that the position was filled by Kelly Zanotti, aged *twenty-nine*, from May 1, 2006 until June 18, 2006 and by Charles Wolstoncraft, aged fifty, on July 16, 2008. (Docket No. 55, Exh. M at ¶ 23).

The Court finds, however, that regardless of the age of Plaintiff's replacement, she has effectively provided sufficient evidence giving rise to an inference of discrimination. While the Court of Appeals has held that a plaintiff can establish a claim of age discrimination by showing that he or she was replaced by a significantly younger person, *see Simpson v. Kay Jewelers*, 142 F.3d at 644, n. 5, it has not held that replacement by a younger individual is the only manner by which a plaintiff may satisfy the fourth prong of a prima facie case of age discrimination. The Court of

Appeals has not directly addressed the issue of whether, under the ADEA, a plaintiff is required to show that he or she was replaced by a significantly younger person in order to establish a prima facie case.[6] However, several Court of Appeals cases suggest that the fourth prong of a *prima facie* case of age discrimination is flexible. *See e.g. Narin v. Lower Merion Township Sch. Dist.*, 206 F.3d at 331; *Simpson v. Kay Jewelers*, 142 F.3d 639, 651 (3d Cir. 1998); and *Torre v. Casio*, 42 F.3d 825, 831 n.6 (3d Cir. 1994)). *See also O'Connor v. Consolidated Coin Caterers Corp.*, 571 U.S. 308, 312 (1998) (where the Supreme Court of the United States held that, "[t]he fact that one person in the protected class has lost out to another person in the protected class is irrelevant, so long as [she] lost out *because of [her] age*") (emphasis in original). Indeed, the Court of Appeals in *Pivorotto v. Innovative Systems, Inc.*, 191 F.3d 344, 357 (3d Cir. 1999) (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 831 (3d Cir. 1994); *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995)) held that the essential inquiry in a *prima facie* termination case under the *McDonnell Douglas* analysis is not necessarily whether a plaintiff is replaced by someone outside the protected class. Rather, the essential issue is whether the plaintiff was discharged under circumstances giving rise to an inference of discrimination. *Id.* at 357.

Moreover, several district courts in this Circuit have predicted that the Court of Appeals

---

[6]

The Court of Appeals did note the issue in *Steward v. Sears Roebuck & Co.* 231 Fed. Appx. 201, 210 n. 5 (3d Cir. 2007), but declined to address the issue under the facts of that case, as the plaintiff had established that she was replaced by significantly younger individuals:

> Since we find that this evidence is sufficient to establish a prima facie case of age discrimination, we need not also consider whether the evidence that other similarly situated employees, who were significantly younger than Steward were treated more favorably than Steward, was also sufficient to establish the fourth element of Steward's prima facie case.

would permit a plaintiff to establish a prima facie ADEA case through other evidence giving rise to an "inference of discrimination." *See Simpson*, 142 F.3d at 644, n.5. In *Grabosky v. Tammac Corp.*, 127 F.Supp. 2d 610 (M.D. Pa. 2000), the Court predicted that the Court of Appeals would not find that replacement by a younger individual is "a *sine qua non* of an age discrimination case." *Id.* (citing *Pivirotto*, 191 F.3d at 354) ("I am convinced that the Third Circuit would *not* hold that a plaintiff must show that he or she was replaced by a younger person as part of a prima facie age discrimination case") (emphasis in original). In that case, the Court found that, in the context of a termination case, "evidence of the seeking or hiring of a replacement to fill the position of a discharged plaintiff ... is, by itself, sufficient to satisfy the fourth element of the plaintiff's ... *prima facie* case of [employment] discrimination." *Id.* at 621.

Similarly, courts in this district have analyzed the fourth prong of a *prima facie* ADEA case under the premise that a plaintiff may satisfy his or her burden by showing either that he or she was replaced by a significantly younger individual or that similarly situated younger employees were treated more favorably than the plaintiff. *See Shontz v. Rite Aid of Pennsylvania*, Inc., Civil Action No. 05-1637, 2008 WL 793878 at * 6 (W.D. Pa. March 24, 2008) (citing *Simpson*, 142 F.3d at 644 and *Steward*, 231 Fed. Appx. At 210, n. 5) (holding that, in order to establish the fourth element of a prima facie case of age discrimination, the plaintiff must show that "he was replaced by a younger person or a younger, similarly situated employee was treated more favorably such that a reasonable inference of age discrimination was created"). *See also Ramanna v. County of Beaver*, Civil Action No. 05-1738, 2008 WL 4204713 at *7 (W.D. Pa. September 11, 2008) (citing *Monaco v. American General Assurance Co.*, 329 F.3d 296 (3d Cir. 2004)).

As such, in determining whether the Plaintiff has established a *prima facie* case of age

discrimination, the Court must look at the evidence presented as a whole in a light most favorable to Plaintiff in order to determine whether the evidence gives rise to an inference of discrimination. *See Simpson*, 142 F.3d at 644, n.5. *See also O'Connor*, 517 U.S. at 312 (quoting *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)) (holding that in order to establish a prima facie case, a plaintiff must offer "'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion'").

While the Plaintiff has not offered evidence that she was replaced by a significantly younger person, insofar as she could not testify to the age of her replacement, (Docket No. 55, Exh. D at 52-53), she has proffered evidence that younger, similarly situated employees were treated more favorably for similar policy violations. As discussed above, Plaintiff has offered evidence that Terri Hoffman, Lori Muic, Patricia Haber-Borden and Vanessa Myers are all individuals under the age forty who were treated more favorably than Plaintiff for similar violations. (Docket No. 64 at 5-11). Additionally, Tina Feehan, the younger associate who participated in the transaction, was not disciplined. (Docket No. 54 at ¶217).

Reading this evidence is a light most favorable to Plaintiff, as the Court is required to do at this stage, *Doe*, 242 F.3d at 446, the Court finds that there is sufficient evidence to create a reasonable inference of discrimination. Specifically, Patricia Haber-Borden and Vanessa Myers, both under the age of forty and therefore outside the protected class, were not terminated for accepting inappropriate discounts. Rather, Haber-Borden was permitted to give a "reasonable excuse" and received a final warning. Vanessa Myers' transaction was not investigated, nor was she disciplined in any way. Although the Court is without information as to the ages of Hoffman and Muic, Plaintiff contends that these individuals were younger and treated more favorably than she. Terri Hoffman

received a substantially lower price on a range than the actual price as a result of a problem with the register. She was permitted to pay the difference and was not otherwise disciplined. Plaintiff, on the other hand, was terminated for accepting a discount that rang up as a result of a "glitch in the computer." (Docket No. 54 at 131). Sears admits that Hoffman was not disciplined and fails to offer evidence of Hoffman's age to refute Plaintiff's contention that younger, similarly situated individuals were treated more favorably. (Docket No. 54 at ¶¶272-276). Similarly, Sears fails to offer evidence of Muic's age to rebut Plaintiff's statements. (Docket No. 54). It can be reasonably inferred, therefore, that Plaintiff was treated less favorably as a result of her age.

Additionally, while Plaintiff was not immediately replaced by a significantly younger individual, she was discharged from the CAC Lead position and replaced. Courts have held that, particularly in discharge cases, the fact that an employee was replaced (*i.e.*, her job was not eliminated) may be enough evidence to give rise to an inference of age discrimination, at the prima facie case stage of the analysis. *See e.g., Grabosky*, 127 F.Supp. 2d at 621) (quoting *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999)) ("'The firing of a qualified [protected class] employee raises the inference of discrimination because it is facially illogical for an employer to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement'").

In sum, the Court finds this evidence sufficient to create an inference of discrimination in the mind of a reasonable juror. Therefore, the Court further finds that Plaintiff has met her initial burden of proving a prima facie case of age discrimination under the ADEA. *See Maxfield*, 766 at 791. As such, the burden of production shifted to Sears to offer a legitimate, non-discriminatory reason for Plaintiff's termination. *Stanziale*, 200 F.3d at 105. As discussed above, while Sears has met this

burden, Plaintiff has offered evidence from which a reasonable jury could infer that Sears' reason is pretext for discrimination, given its treatment of other employees in parallel circumstances. *See Fuentes*, 32 F.3d at 764 (citing *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122-24 (7th Cir. 1994); *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993)) ("[I]f the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case"). Therefore, Sears' motion for summary judgment as to Plaintiff's ADEA claim is denied.

C.    *Plaintiff's Hostile Work Environment Claims*

In regard to Plaintiff's hostile work environment claims, Sears contends that Plaintiff has failed to show that Sears engaged in sufficiently severe or pervasive behavior to support such claims. (Docket No. 53 at 15). Specifically, Sears argues that "the only action by Sears that [the Plaintiff] contends supports her hostile work environment claim is the mere <u>fact</u> that she was terminated. ... [The Plaintiff] has not proffered any facts to suggest that the events surrounding her termination were hostile or abusive." (Docket No. 53 at 16) (emphasis in original). In her response, the Plaintiff fails to specifically address Sears' contention that her hostile work environment claims should not survive summary judgment. (Docket No. 63). The Plaintiff does argue, however, that she was terminated for a violation of Sears' associate discount and honesty policies and, in terminating her, Sears "intended to discriminate against her on the basis of her race and national origin." (Docket No. 64 at 10).

In order to survive summary judgment on a hostile work environment claim, the Plaintiff must establish (1) that she suffered intentional discrimination as a result of her race or national

origin; (2) that the discrimination was pervasive or regular; (3) that she suffered a detriment as a result of the discrimination; (4) that the discriminatory conduct would have detrimentally affected a reasonable person in the same protected class and position; and (5) there is vicarious liability. *Cardenas v. Massey*, 29 F.3d 251, 260 (2001) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)). In the instant motion, Sears contends that the Plaintiff has failed to meet her burden of establishing a prima facie case because she has not proffered any facts to show that she suffered severe or pervasive harassment. Based on the reasons outlined herein, the Court finds that Plaintiff has failed to offer sufficient evidence to support her hostile work environment claim.

The Supreme Court has held that the "very nature" of a hostile work environment claim involves repeated conduct and requires more than a single discriminatory act. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). In order to maintain a hostile work environment claim under Title VII and §1981, the Plaintiff must show that the "workplace permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). In considering whether a plaintiff has presented a prima facie cause of action for condoning a hostile work environment, the Court should look to "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. at 23). Moreover, in determining whether the Plaintiff has established a claim for hostile work environment, the Court should look at the record as a whole to determine whether, in the overall scenario, Plaintiff has been subjected to ongoing and pervasive

discrimination. *Cardenas*, 29 F.3d at 260 (citing *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999); *Harris*, 510 U.S. at 23; and *Aman*, 85 F.3d at 1081-84).

In support of her claim of an hostile work environment, Plaintiff has offered only that she was terminated. (Docket No. 55, Exh. C at 5-18). Specifically, Plaintiff testified in her deposition that, aside from her termination, she was not treated with discrimination on a regular basis at Sears:

> Q.   Other than your termination, and the fact that you were terminated, and these letters that occurred, that you received after your termination, I think you just said that you looked forward to going to work; correct?
> A.   Yes.
> Q.   Did anyone at your workplace, at Sears, treat you in a way that you felt was poor, treat you poorly, or treat you in an improper manner, other than, again, your termination?
> A.   No.
> Q.   Is that a no?
> A.   No.

(Docket No. 55, Exh. C at 5-20). Plaintiff's Reply to Defendant's Statement of Facts offers no other facts in support of her claim that Sears condoned pervasive, regular and severe discriminatory conduct such that discrimination unreasonably interfered with Plaintiff's work performance. (Docket Nos. 63-64). *See Morgan*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. at 23). Moreover, Plaintiff may not rely on the unsupported allegations of her Complaint in order to survive summary judgment, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587-9; rather, she is required to present specific evidence of a genuine issue of material fact for trial in regard to her claim that Sears condoned a hostile work environment. *Simpson*, 142 F.2d at 643 n. 3. Because she has failed to provide any evidence that she was subjected to pervasive and regular discrimination, Plaintiff has not established a prima facie case of hostile work environment. Therefore, Sears' motion for summary judgment as to this claim is granted.

D.       *Plaintiff's Breach of Common Law Breach of Contract*

In support of its motion for summary judgment as to Plaintiff's breach of contract claim,

Sears argues that said claim fails because: (1)  Plaintiff had no employment contract with Sears; and

(2) her breach of contract claims are barred by the Pennsylvania Human Relations Act, 43 P.S. §§

955, 962 ("PHRA").  (Docket No. 53 at 17-18).  In response, Plaintiff does not directly address the

argument that her breach of contract claim cannot withstand Sears' motion for summary judgment.

(Docket No. 63). In her Amended Complaint, Plaintiff alleges that Sears:

> represented to their employees in various writings, including but not limited to,
> personnel policies and procedure manuals, employees guidelines and notices placed
> in the work place, that their employment with [Sears] would be based on good faith;
> that employees would be treated fairly  and equitably; that employees would not be
> harassed, threatened or subjected to abusive behavior relating to racial, national
> origin, sex, disability or any other prohibitive [sic] behavior; that no employee would
> be subjected to discharge or disciplinary action but upon the establishment of just
> cause for the same; and, that [Sears] offered and maintained a unique and positive
> work environment comprised of a diverse and talented workforce. Such
> representation and provisions of [Sears] constituted and formed a part of the express
> and/or implied contract with the Plaintiff.

(Docket No. 25 at ¶43).  Plaintiff further alleged that she executed all of her duties and

responsibilities under the employment contract she had with Sears, but that Sears subjected her to

discrimination and wrongfully discharged her without cause in breach of said contract. (Docket No.

25 at ¶44).  Aside from these allegations in her Amended Complaint, Plaintiff has produced no

evidence of an employment contract.  The Court has only Sears' employee handbook, which was in

effect at the time Plaintiff was terminated. It provides, in relevant part:

**Associate Acknowledgment- COMPANY COPY**

The contents of the Associate handbook constitute an introduction to various Sears,
Roebuck and Co.'s policies and procedures.  The policies and procedures contained
in this handbook are general policy statements only and are intended as guidance for

maintaining an effective employment relationship. The policies contained herein do not constitute a promise that they will be applied in their entirety in all cases. The facts of each circumstance will dictate the appropriate course of action.

No employment rights are conferred upon associates by this handbook and its contents should not give rise to any legitimate expectations of continued employment. ... *Employment at Sears is considered indefinite and terminable at will of either Sears or the associate, with or without cause at any time*. Specifically, Sears and/or the associate may terminate the employment relationship at any time, with or without notice, regardless of the length of service. Further, nothing contained in this handbook shall in any way be construed so as to modify Sears' at-will relationship with its associates.

Neither shall the policies or procedures contained in the handbook or any other Sears memorandum, manuals or publications be construed as contractual in nature, nor do such policies or procedures give rise to contractual rights of any kind.

(Docket No.56, Exh. A at p.3) (emphasis added). The Associate Acknowledgment includes a space for the associate to sign, acknowledging receipt of the handbook. *Id.* (the form states, "Associate receives and reads Handbook and signs Acknowledgment form (Company copy) and returns it to their HR Representative"). Moreover, in her deposition, when directed to the "at-will" language in the Associate handbook, Plaintiff testified that she understood at the time of her termination that she was not guaranteed employment at Sears for any specific period of time. (Docket No. 55, Exh. B-2 at 109). Additionally, on her application for employment, directly above the Plaintiff's signature, (*see* Docket No. 55, Exh. B-1 at 20), is a provision which provides:

In consideration of my employment, I agree to conform to the rules and regulations of Sears ... and my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no unit manager or representative of Sears ... other than the President or Vice-President of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

(Docket No. 55, Exh. B-2).

Because Plaintiff read and signed the associate handbook, agreeing that her employment would be at-will and subject to termination at any time, the Court finds that she has not offered sufficient evidence of the existence of a contract with Sears.

Under Pennsylvania law, there is a strong presumption in favor of at-will employment, unless there is either an express or implied- in-fact contract, as well as additional consideration, such that the Court could infer that the parties intended to overcome the at-will presumption. *Permenter v. Crown Cork & Seal Co.*, Inc., 38 F.Supp. 2d 372, 377 (E.D. Pa. 1999); *see also Raines v. Haverford College*, 849 F.Supp. 1009,1011 (E.D. Pa. 1994) ("[T]he employment-at-will doctrine applies absent a clear intent by the parties to the contrary.") "'To rebut the presumption of at-will employment, a plaintiff must establish the existence of: (1) sufficient additional consideration; (2) an agreement for a definite duration; (3) an agreement specifying that the employee will be discharged only for just cause; or (4) an applicable recognized public policy exception.'" *Martin v. Safeguard Scientifics, Inc.*, 17 F.Supp. 2d 357, 368 (E.D. Pa. 1998) (quoting *Geiger v. AT&T Corp.*, 962 F.Supp. 637, 648 (E.D. Pa. 1997)) (citations omitted). Apart from the allegations contained in Plaintiff's Amended Complaint, she has not pointed to any specific facts that would rebut a presumption of at-will employment. As previously noted, Plaintiff cannot rely merely on allegations contained in her pleadings in attempting to survive summary judgment. *Matsushita*, 475 U.S. at 574. Rather, it is her burden to sufficiently rebut the presumption that her employment was at-will by presenting sufficient facts that would permit a reasonable jury to find that an implied contract existed. *Martin*, 17 F.Supp. 2d at 370-71. Here, Plaintiff has offered no evidence of "sufficient additional consideration; (2) an agreement for a definite duration; (3) an agreement specifying that the employee will be discharged only for just cause; or (4) an applicable recognized public policy exception." *Martin*, 17 F.Supp. 2d

at 370-71.

Whether the handbook is a written agreement between the parties, containing contractual terms is a question of law for the Court. *Ruzicki v. Catholic Cemetaries Ass'n*, 610 A.2d 495, 497 (1992). Under Pennsylvania law, an employee handbook can create a legally binding contract between the employer and employee. *Martin v. Capital Cities Media, Inc.*, 511 A.2d 803, 841 (1986). In order for the Court to find that an employee handbook constitutes a contract, there must be a clear indication in the handbook that the employer intends to overcome the at-will presumption. *Raines,* 849 F.Supp. at 1012. Pennsylvania courts have held that "provisions in employee handbooks which contain disclaimers or state there is no intent to create an employment contract are sufficient to retain the at-will presumption." *Id.* (citing *Ruzicki*, 610 A.2d 495, 496 and *Rutherfoord v. Presbyterian-Univ.*, 612 A.2d 500 (Pa. Super. 1992)). Here, the handbook contains a disclaimer[7]

_____

[7]     The handbook provides:

The contents of the Associate handbook constitute an introduction to various Sears, Roebuck and Co.'s policies and procedures.  The policies and procedures contained in this handbook are general policy statements only and are intended as guidance for maintaining an effective employment relationship.  The policies contained herein do not constitute a promise that they will be applied in their entirety in all cases. The facts of each circumstance will dictate the appropriate course of action.

No employment rights are conferred upon associates by this handbook and its contents should not give rise to any legitimate expectations of continued employment. ... *Employment at Sears is considered indefinite and terminable at will of either Sears or the associate, with or without cause at any time.* Specifically, Sears and/or the associate may terminate the employment relationship at any time, with or without notice, regardless of the length of service. Further, nothing contained in this handbook shall in any way be construed so as to modify Sears' at-will relationship with its associates.

(Docket No.56, Exh. A at p.3) (emphasis added).

which Plaintiff read, signed and understood. (Docket No. 55, Exh. A). Because Plaintiff has failed to show other evidence demonstrating intent to overcome the at-will presumption and because Sears clearly indicated that it did not intend to be bound by the handbook, the Court finds that there was no contract between the parties.

Moreover, the Plaintiff's breach of contract claim is barred by the PHRA. Pennsylvania courts have found that the PHRA preempts common law breach of contract claims, when said claims are based on the same facts as the plaintiff's discrimination claims. *See Sola v. Lafayette College*, 802 F.2d 40, 44 (3d Cir. 1986) (citations omitted); *see also Keck v. Commercial Union Ins. Co.*, 758 F.Supp. 1034, 1036-37 (M.D. Pa. 1991) (citing *DeRamo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D.Pa.1985); Sola, 804 F.2d at 43-44; and *Clay v. Advanced Computer Applications*, 559 A.2d 917 (Pa. 1989) ("[C]ommon law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from [] discrimination are actionable at common law").

Here, Plaintiff's breach of contract claims are based on the same facts as her discrimination claims. Specifically, Plaintiff alleges that Sears breached its contract with her by discharging her wrongfully based on age, race and national origin. Because this conduct forms the basis of her discrimination claims, the PHRA preempts her common law breach of contract claim. *Keck,*, 758 F.Supp. at 1036-37.

E.      *Plaintiff's Intentional Infliction of Emotional Distress Claims*

Sears argues that the Plaintiff's intentional infliction of emotional distress claim fails because it is barred by the Pennsylvania Workers' Compensation Act, 77 Pa. Cons. Stat. Ann. §481(a), ("WCA"). (Docket No. 53 at 18-19). Alternatively, Sears argues that her claim fails because the

49

Plaintiff has not established that Sears engaged in extreme and outrageous conduct, as required by Pennsylvania law. (Docket No. 53 at 19). Again, in her reply to Sears' motion, Plaintiff fails to specifically address Sears' defense to her intentional infliction of emotional distress claim. However, her Amended Complaint alleges:

> [Sears] engaged inn [sic] a course of conduct that caused the Plaintiff to suffer severe emotional distress. In particular, [Sears] allowed the existence of a hostile workplace environment; by treating the Plaintiff in a discriminatory manner; and, by discharging the Plaintiff without good cause while other [sic] who violated the same policy were not disciplined and/or discharged which occurred in violation of alleged established company police [sic] and applicable state and federal laws.

(Docket No. 45 at ¶48).

The Pennsylvania Workers' Compensation Act ("WCA") provides the exclusive remedy for work related injuries as follows:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees ... in any action at law or otherwise on account of any injury or death as defines in section 301(c)(1) and (2) ...

77 Pa.C.S.A. §481(a). For purposes of this section "injury" is defined as follows:

> (1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated, or accelerated by the injury ... The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment ...

77 Pa.C.S.A. §411(1). Because the WCA provides the exclusive remedy for injuries arising in the course of employment, absent an exception provided in the statute, an intentional tort claim arising in the course of the plaintiff's employment will be barred. 77 Pa.C.S.A. §481(a); 77 Pa. C.S.A. §411(1). *See also Vallerey Stylianoudis v. Westinghouse Credit Corp.*, et al, 785 F.Supp. 503, 532

50

(E.D. Pa. 1992) ("... [T]here [is] no intentional tort exception to the exclusivity provision of the WCA") (citing *Poyser v. Newman & Co.*, 522 A.2d 548, 551 (Pa. 1987)). In the context of employment discrimination, when a plaintiff alleges intentional infliction of emotional distress arising from the alleged discrimination, courts have found that any such injury arises as a result of the plaintiff's employment, and the tort claim is, therefore, barred by the WCA. *Stylianoudis*, 785 F.Supp.at 532-33 (citing *e.g. James v. IBM*, 737 F.Supp. 1420, 1427 (E.D. Pa. 1990); *Kinnally v. Bell of Pennsylvania*, 748 F.Supp. 1136, 1143 (E.D. Pa. 1990); *Kuhn v. Mellon Bank*, N.A., No. 87-2767 (W.D. Pa. June 19, 1989)). *See also Hancuff v. Prism Technologies and Assemblies, LLC, et al*, 357 F.Supp. 2d 828, 834 (W.D. Pa. 2005) (holding that the personal animus exception found in the WCA did not apply to the plaintiff's Title VII sexual harassment claims: "Pennsylvania law presumes that an injury is work-related where it occurs ... on the employer's premises. Plaintiffs have set forth nothing more than repeating their allegations of sexual harassment that occurred at the workplace in support of their argument to remove their cases from the [WCA]. The allegations ... are preempted by the [WCA]").

Here, Plaintiff alleges that she suffered emotional distress as a result of her employer's actions. (Docket No. 25 at ¶48). Specifically, the Plaintiff provides that, in discriminating against her and terminating her employment as a result of said discrimination, Sears intentionally engaged in conduct which caused her severe emotional distress. (Docket No. 25 at ¶¶ 47-48). Plaintiff's allegations, however, reflect that the cause of her emotional distress was Sears' actions regarding Plaintiff's employment at its place of business. *Id.* Because Plaintiff's alleged claim of intentional infliction of emotional distress arose in the course of Plaintiff's employment, her claims are barred by the WCA. *Stylianoudis*, 785 F.Supp.at 532-33.

51

Furthermore, even if Plaintiff's claim was not barred by the WCA, the Plaintiff has not established a claim for intentional infliction of emotional distress because she has not shown that Sears engaged in extreme and outrageous conduct. Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress, the Plaintiff must show that Sears "'by extreme and outrageous conduct intentionally cause[d] severe emotional distress'" to her. *Robinson v. May Department Stores Co.*, 246 F.Supp.2d 440, 443 (E.D. Pa. 2003) (quoting *Wilder v. United States*, 230 F.Supp. 2d 648, 652 (E.D. Pa. 2002)) (citations omitted). For conduct to be considered extreme and outrageous, it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Atamian v. Assadzadeh*, No Civ. A. 00- cv- 3182, 2002 WL 538977 (E.D. Pa. April 9, 2002)); *see also Swisher v. Pitz*, 868 A.2d 1228, 1230-31 (Pa. Super. 2005) (citing *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004)).

Here, the only conduct, on the part of Sears that the Plaintiff has alleged resulted in extreme emotional distress is the Plaintiff's termination. (Docket No. 55, Exh. C at 5-20). Termination alone, however, will not be sufficient to show that Sears' conduct was extreme and outrageous. *See Foster v. JLG Indus.,* 372 F.Supp.2d 792, 801 (M.D. Pa. 2005). In fact, courts have found that a termination, even if driven by discriminatory intent, will not rise to the level of extreme and outrageous conduct. *Glickstein v. Consolidated Freightways,* 718 F.Supp. 438, (E.D. Pa. 1989); *Frankel v. Warwick Hotel,* 881 F.Supp. 438 (E.D.Pa. 1995); and *Lantz v. University Hospital*, Civ. A. No. 96-2671, 1996 WL 442795 (E.D.Pa. July 20, 1996)). Because Plaintiff has offered no other evidence of conduct resulting in emotional distress aside from her termination, the Court finds that Sears did not engage in the requisite extreme and outrageous conduct.

For the foregoing reasons, summary judgment is granted in regard to Plaintiff's intentional infliction of emotional distress claim.

## VI.     Conclusion

Based on the foregoing, Sears Holding Corporation is dismissed.  Sears' motion for summary judgment as to Plaintiff's hostile work environment, breach of contract and intentional infliction of emotional distress claims is granted.  Sears' motion for summary judgment as to Plaintiff's ADEA and race and national origin discrimination claims is denied. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 26, 2009

cc:      All counsel of record